

_____
Honorable Bruce A. Markell
United States Bankruptcy Judge



Entered on Docket
April 09, 2012

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br><br>JAMES SPICKELMIER and<br>KATHERIN SPICKELMIER,<br><br>Debtors. | Case No.: BK-S-11-10034-BAM<br><br>Chapter 13<br><br>Date:         October 12, 2011<br>Time:         9:30 a.m.<br>Courtroom:  3 |

OPINION[1]

BRUCE A. MARKELL, Bankruptcy Judge:

The hearing on this Rule 9011 Order to Show Cause did not start auspiciously. After reserving a half-day for the hearing, the court waited to call the matter to allow debtors' counsel, who was subject to the order and whose tardy arrival the court anticipated, extra time to arrive. After waiting almost ten minutes, the court took appearances, and only one lawyer–for a creditor–entered an appearance. One debtor was also present.

Without any appearance by the attorney or law firm named in the Order to Show Cause, the court indicated it would take the matter under submission and then prepared to adjourn. At this point, the debtor present asked to be heard, and the court allowed him to speak. As he was expressing his concerns about the poor quality of his counsel's representation, his attorney – Jeremy Mondejar of the law firm of Barry

---

[1] To the extent that this case has been administratively closed, Dkt. No. 84, it is hereby reopened for the purpose of filing this opinion. The case may be reclosed upon the filing of this opinion.

Levinson & Associates – finally arrived. He was approximately 15 minutes late. As he approached the lectern, he turned on his laptop computer, balanced it in one hand, and began scanning its screen apparently to determine what the hearing was about. He then made his appearance.

The lawyer's subsequent performance, as detailed below, shows that he was unaware of what had been filed in the case and ignorant of the contents of the Order to Show Cause at issue. He floundered, showing an almost complete lack of preparation. It was painful for all in the courtroom, from the client who saw his money being wasted, to the court staff who all too often had seen similar performances from the same attorney, to the court who had to endure silences – sometimes approaching 30 seconds – as Mr. Mondejar attempted to understand and answer the court's questions from information on his computer screen.

Were there ever a time to use "fail," as the contemporary vernacular permits, it is now, and in reference to this deplorable display of legal representation: it was an epic fail.

## I. FACTS

*The Debtors' Filing and Dismissal of the Debtors' Case*

The events leading up to Mr. Mondejar's flub are not particularly unusual. This case involves James and Katherin Spickelmier (the "Debtors"). They filed Chapter 13[2] bankruptcy on January 3, 2011. (Dkt. No. 1). Barry Levinson, of Barry Levinson & Associates,[3] was their counsel.

---

[2] Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure. All "Local Rule" references are to the Local Rules of Practice of the United States District Court, District of Nevada, as presently in effect.

[3] In this opinion, any reference to Mr. Levinson or any other attorney from his office specifically should be read as a reference to his firm generally. As stated in Rule 9011(c)(1)(A): "Absent exceptional circumstances, a law firm shall be held jointly

2

On March 9, 2011, Bank of Nevada, a creditor, moved to dismiss or convert the Debtors' case to another chapter. (Dkt. No. 21). On May 6, 2011, the court entered an order granting the motion. The order gave the Debtors to convert or dismiss the case within thirty days. (Dkt. No. 34).

On June 1, 2011, the Debtors entered into a stipulation, Dkt. No. 39, with Rick A. Yarnall (the "Chapter 13 Trustee"). The stipulation provided that the Debtors were to voluntarily convert their case to one under Chapter 7 or voluntarily dismiss their case by June 9, 2011, and that, in the event the Debtors failed to pursue either of those alternatives, the Chapter 13 Trustee would have the option to submit an ex-parte request to dismiss the case. *(Id.)* The Debtors did not comply with the stipulation.[4] (Dkt. No. 46). Accordingly, at the request of the Chapter 13 Trustee, the court dismissed the Chapter 13 case on June 27, 2011. (*Id.*)

---

responsible for violations committed by its partners, associates, and employees."

The court, however, sanctions Mr. Mondejar only for the conduct described herein, *see infra* Part II.A-B, and not for any other conduct attributable solely to Mr. Levinson or the rest of his law firm. Since the events leading up to this opinion, Mr. Mondejar has left Mr. Levinson's law firm and is now affiliated with a new law practice. *See* Bar Record of Jeremy G. Mondejar, http://www.nvbar.org/find-a-lawyer/ (last visited Apr. 6, 2012).

As for Mr. Levinson and the rest of his law office, this opinion describes only one of the many instances where he and his law firm have provided a client with poor representation. The court has previously ordered all attorneys employed by Mr. Levinson's office who do substantial work on Chapter 11 cases to take eight hours of Continuing Legal Education ("CLE") courses each year for two years. *See* Nov. 24, 2009 Order, Dkt. No. 118, *In re Benjamin Kadosh*, Case No. 09-19686; Nov. 24, 2009 Order, Dkt. No. 192, *In re Signs West, Inc.,* Case No. 09-17213; Feb. 25, 2010 Order, Dkt. No. 340, *In re Khoan Chea Than and Khem Muoy Than*, Case No. 09-12939.

In the Thans' Chapter 11 case, the court ordered that a trustee be appointed to investigate and report on the representation provided by Mr. Levinson's office and the compensation paid by the debtors in that case for legal services. *See* Order Appointing Trustee and Setting Status Conference, Dkt. No. 419, *In re Khoan Chea Than and Khem Muoy Than*, Case No. 09-12939. On February 14, 2012, the Chapter 11 trustee in that case represented to the court that she will move for an order requiring Mr. Levinson's office to disgorge fees pursuant to Section 329.

[4]The Debtors did, however, file a motion to convert their case to one under Chapter 11 on June 3, 2011. Dkt. No. 40.

3

*The Debtors' Redundant Motions*

On August 3, 2011, Mr. Levinson's office filed an "Amended Motion to Vacate Order of Dismissal" (the "First Amended Motion"; Dkt. No. 61). The two page motion, consisting of a lengthy quotation of Civil Rule 60 and a statement of facts of about 10 lines, contained no legal or other analysis upon which this court could grant the relief sought. (*Id.*) The hearing on the motion was set for September 1, 2011 at 2:30 p.m. (Dkt. No. 65). The hearing was held as scheduled, but no one appeared for the Debtors. (*Id.*) The court denied the motion on September 13, 2011. (*Id.*)

On September 20, 2011, Mr. Levinson's office filed an "Amended Motion to Vacate Order of Dismissal on an Ordering [*sic*] Shortening Time" (the "OST Motion"), Dkt. No. 68, with respect to an "Amended Motion to Vacate Order of Dismissal" (the "Second Amended Motion"), Dkt. No. 67.

The First Amended Motion, the Second Amended Motion, and the OST Motion differed only by their titles, dates, docket numbers, and hearing information. Their substance was virtually identical, indicating the use of word processing copying. Mr. Levinson's affidavit (the "Levinson Affidavit") submitted in support of the OST Motion, contained no reference to any other evidence in the record, and added only hearsay to the cause: "I feel good cause exists for the granting of an Order Shortening Time to hear the Motion in an expedited manner. If the hearing is heard in the ordinary course the Debtors will be liable for being garnished, creditors, and risk of foreclosure on property." Dkt. No. 69, p. 2.

On September 23, 2011, the court denied the Debtors' OST Motion because: it did not comply with Local Rule 9006(a); was not sufficiently supported by facts justifying the relief requested; and the relief requested had been previously requested and denied. (Dkt. No. 71).

*The Order to Show Cause*

The court's September 23, 2011 order not only denied the OST Motion, but it also set an order to show cause given the circumstances under which Mr. Levinson's office submitted it. In particular, it required Mr. Levinson's office to appear and show cause why the filing of the OST Motion did not violate Rule 9011. (*Id.* at 1). After the court informed counsel of its concerns, the order specifically advised counsel to be prepared to discuss the following at the hearing on the order to show cause:

> (i) [W]hy he filed an OST Motion for the same motion, Dkt. No. 61, which was previously opposed and which this court denied on September 13, 2011, Dkt. No. 65; [¶]
> (ii) why he has failed to disclose both the previous motion, Dkt. No. 61, and the order denying same, Dkt. No. 65, in his OST Motion; and [¶]
> (iii) why he did not notify the party who opposed the previous motion in the attorney information sheet as required by Local Rule 9006(a) (and why the date of notification of the Office of the United States Trustee was in June, when the OST Motion is dated in September).

(*Id.* at 1-2). The court also warned counsel that he should be prepared to address "why the OST Motion, which does not contain any information that would help the court find a basis upon which to grant the relief requested, does not violate [Rule] 9011."[5] (*Id.* at 2). In particular, the court requested that counsel be prepared to offer specific examples, supported by admissible evidence, of the prejudice referred to in the Levinson Affidavit. (*Id.*)

*The Show Cause Hearing*

The court scheduled the show cause hearing for October 12, 2011 at 9:30 a.m. (*Id.* at 1). It was the only matter on calendar, and the court had set aside a half day for it. The court, having anticipated that counsel would

---

[5]On this point, the court further warned counsel that if the court found any violations of Rule 9011, the court could: "(i) impose monetary sanctions; (ii) impose nonmonetary sanctions, such as limitations and restrictions on counsel's ability to file cases for debtors in this court; (iii) order counsel to disgorge fees under the authority of § 329; or (iv) refer to the matter to the Nevada State Bar for separate disciplinary proceedings." Dkt. No. 71, p. 2.

5

be late, waited to call the matter almost 10 minutes after its scheduled time. (Tr. of Show Cause Hr'g, Dkt. No. 79, p. 3). With only counsel for Bank of Nevada entering an appearance, the court took the matter under submission and prepared to adjourn. (*Id.* at 4). When one of the Debtors, Dr. James Spickelmier, asked to be heard, the court went back on the record. (*Id.*)

Dr. Spickelmier expressed his dissatisfaction with the representation he had received from Mr. Levinson's office. (*Id.*) He stated that counsel had previously failed to appear in court, that counsel had twice assured him that he would appear at the show cause hearing, and that counsel had received payment of over $5,000 for services rendered in this case. (*Id.* at 4-5).

At approximately 9:45 a.m., almost 15 minutes after the hearing's scheduled time, Mr. Mondejar, an attorney from Mr. Levinson's office, interrupted Dr. Spickelmier and entered an appearance as set forth in the introduction above. (*Id.* at 6). When asked why he was 15 minutes late, Mr. Mondejar explained that he "just got caught up in traffic, and . . . was trying to look up some notes . . . on-line."[6] (*Id.*) From that point, Mr. Mondejar continued to stare at his laptop computer as he struggled to respond to the simplest of queries by the court.

As he read from his laptop, Mr. Mondejar successfully identified the matter before the court: "this is [the] order to show cause for the vacation of . . . the order to dismiss." (*Id.* at 7). But Mr. Mondejar only managed to tread water for so long; he painfully floundered through the remainder of the hearing.

When the court asked Mr. Mondejar for his response to the Order to Show Cause, eyes fixated on his computer screen, he replied:

Okay. We were going to convert this. We're going to convert

---

[6]The court, however, did not receive a phone call or any other notification that Mr. Mondejar would be late to the hearing.

6

>     this to a Chapter 11, and he was over the debt limit for a 13.
>     And we believe it's in the best interest, and it's just that we . . .
>     didn't have the proper time to do all that stuff, and he's over the
>     debt limit, so, I mean, we just need the time to do that stuff,
>     your Honor.

(*Id.* at 7-8).

In an attempt to shepherd Mr. Mondejar through the hearing, the court quoted portions from the Order to Show Cause. Specifically, the court directed Mr. Mondejar's attention to its request for admissible evidence demonstrating the existence of the prejudice referred to in the Levinson Affidavit, the prejudice which supposedly necessitated an order shortening time. (*Id.* at 8-9). The only evidence Mr. Mondejar was prepared to offer, after consulting with Dr. Spickelmier during the hearing, was that a notice of foreclosure had been placed on the Debtors' door two weeks before the hearing. This action, however, would have occurred *after* the filing of the OST Motion.[7] (*Id.* at 11).

Similarly disappointing was Mr. Mondejar's explanation for why Mr. Levinson's office had filed a motion, to be heard on shortened time, that was identical to a previous motion, which the court had denied, and why the later filing contained no mention of the previous denial. (*Id.*) He had none. (*Id.*) All he had was what he could read from his computer screen.[8] (*Id.*)

---

[7]The court pointed out that a foreclosure notice posted on the Debtors' property two weeks before the hearing would have been after the September 20, 2011 OST Motion and thus did not speak to the prejudice referred in the Levinson Affidavit. Still, Mr. Mondejar did not offer any additional evidence of the alleged prejudice. As to the risk of garnishment, Mr. Mondejar stated: "they haven't started any garnishment actions against him." Dkt. No. 79, p. 10.

[8]Though he was unable to satisfactorily respond to the court's Order to Show Cause, Mr. Mondejar nonetheless implored the court not to order complete disgorgement of all fees the Debtors paid to Mr. Levinson's office. Dkt. No. 79, pp. 12, 13. He stated: "I would ask that you don't do that, your Honor. You know, I was just hired on . . . a few weeks ago." *Id.* at 12. While he acknowledged that he represented Mr. Levinson's office and that the firm had been the Debtors' counsel of record since before he took over the case, Mr. Mondejar continued to offer an excuse for his lack of preparation: "It's just,

7

This was the lowest moment in attorney representation the court has ever witnessed.

## II. ANALYSIS OF RULE 9011 VIOLATIONS

### *A. The Requirements of Rule 9011*

Rule 9011 addresses representations made by all who file or appear in bankruptcy court:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
> (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Rule 9011(b).[9]

A bankruptcy court may independently assess violations of Rule 9011. Rule 9011(c)(1)(B) ("On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.").

Under Rule 9011(b)(3), bankruptcy courts have the authority to

---

you know, I'm in charge of the case now, and . . . it's been a little difficult to get on top of everything and put this all in order, you know, in the allotted time." *Id.* at 13.

[9]The language of Rule 9011 parallels that of Civil Rule 11. Therefore, courts analyzing sanctions under Rule 9011 may appropriately rely on cases interpreting Civil Rule 11. *See Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 381 (B.A.P. 9th Cir. 2011) (citing *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994)).

8

sanction attorneys who present, through signing, filing, submitting, or later advocating, a pleading that is frivolous. *Winterton v. Humitech of N. Cal., LLC (In re Blue Pine, LLC)*, 457 B.R. 64, 75 (B.A.P. 9th Cir. 2011). According to the Bankruptcy Appellate Panel of the Ninth Circuit, "[t]he word 'frivolous,' when used in connection with sanctions denotes a filing that is both baseless—lacks factual foundation—and made without reasonable competent inquiry." *Id.* (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)). An attorney, then, "has a duty to conduct a reasonable factual investigation as well as to perform adequate legal research that confirms that his position is warranted by existing law (or by a good faith argument for a modification or extension of existing law)." *Id.* (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). "Thus, a finding that there was no reasonable inquiry into either the facts or the law is tantamount to a finding of frivolousness." *Id.* (citing *Townsend*, 929 F.2d at 1362).

When considering whether to impose sanctions, the court measures the conduct of attorneys who appear before it objectively. *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (citing *Townsend*, 929 F.2d at 1362). "The standard is reasonableness." *Id.* (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829-30 (9th Cir. 1986), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)). The reasonableness of an attorney's conduct, in turn, is measured against that "of a competent attorney admitted to practice before the involved court." *In re Kayne*, 453 B.R. at 382 (citing *Smyth v. City of Oakland* (*In re Brooks-Hamilton*), 329 B.R. 270, 283 (B.A.P. 9th Cir. 2005) (quoting *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir. 1991) (in turn citing *Zaldivar*, 780 F.2d at 829-30))), *aff'd in part, rev'd in part on other grounds, and remanded*, 271 F. App'x 654 (9th Cir.

2008). As a consequence, an attorney may act negligently and still violate Rule 9011. *In re Schivo*, 462 B.R. 765, 777 (Bankr. D. Nev. 2011) (citations omitted); *In re Smith*, 462 B.R. 783, 793 (Bankr. D. Nev. 2011) (citations omitted). "[T]he subjective intent of the movant . . . is of no moment." *Wilson,* 326 F.3d at 1109 (quoting *Zaldivar*, 780 F.2d at 830) (original modifications and quotations omitted). "[T]he attorney must only fail to meet" the objective standard. *In re Schivo*, 462 B.R. at 777.

While subdivision (b) of Rule 9011 provides the required standard, subdivision (c) governs the nature of sanctions the court may impose. Rule 9011(c) ("If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction . . . ."). *See also In re Blue Pine*, 457 B.R. at 75. Sanctions for violations of Rule 9011 are to be deterrent in nature. Rule 9011(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."). *See also In re Brooks-Hamilton*, 329 B.R. at 283. However, given the various forms improper conduct may assume, a court imposing sanctions under Rule 9011 "has wide discretion in determining what sanction" should properly be imposed. *Id.* at 285 (citing *Kowalski-Schmidt v. Forsch* (*In re Giordano*), 212 B.R. 617, 622 (B.A.P. 9th Cir. 1997), *aff'd in part, rev'd in part on other grounds*, 202 F.3d 277 (9th Cir. 1999) (unpublished table decision)).[10]

---

[10]The court is cognizant of the American Bar Association Standards for Imposing Lawyer Sanctions (the "ABA Standards"), particularly the section of the ABA Standards that addresses aggravating and mitigating circumstances. The court has considered these standards to the extent they apply. As discussed above, the imposition of sanctions is within the court's sound discretion. The court, therefore, declines to "slavishly intone[]" the ABA Standards in situations where they are not fully applicable. *In re Brooks-Hamilton*, 400 B.R. 238, 255 (B.A.P. 9th Cir. 2009) (Markell, J., concurring). As recently recognized by the Ninth Circuit Bankruptcy Appellate Panel, the ABA Standards are sometimes a "helpful guide;" however, consideration of the ABA Standards is not

### *B. Violations of Rule 9011*

#### 1. Violations of Rule 9011(b)(2)

Mr. Levinson's signature on the OST Motion and the Levinson Affidavit raise significant questions under Rule 9011(b)(2). Paragraph (2) of Rule 9011(b) requires that "the claims, defenses, and other legal contentions" contained within a motion be "warranted by existing law or the establishment of new law." Rule 9011(b)(2). By signing, filing, submitting, or later advocating a motion, an attorney certifies that to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the motion complies with Paragraph (2). Rule 9011(b). This certification extends to the "duty to conduct a reasonable factual investigation as well as perform adequate legal research that confirms his position is warranted by existing law (or by a good faith argument for a modification or extension of existing law)." *In re Blue Pine*, 457 B.R. at 75 (citing *Christian*, 286 F.3d at 1127). The court assesses a potential violation of Rule 9011(b)(2) against the reasonably competent attorney standard. *In re Grantham Bros.*, 922 F.2d at 1441.

Here, a reasonably competent attorney would not have submitted the OST Motion or the Levison Affidavit without significant changes and additions. The reasonably competent attorney would not have moved for an

---

mandatory, as this would be "inconsistent with the exercise of discretion needed for a bankruptcy court to remedy attorney misconduct . . . ." *In re Nguyen*, 447 B.R. 268, 277 (B.A.P. 9th Cir. 2011) (en banc).

Here, Mr. Mondejar fails in his attempt to justify his behavior because he had been hired a few weeks before the hearing, and he had experienced difficulty " get[ting] on top of everything and put[ting] this all in order . . . in the allotted time." The court acknowledges that an attorney is often forced to manage an overwhelming case load under strict time constraints. However, even in light of this difficulty, the court cannot conjure up any excuse for an attorney who prepares for a hearing as he is walking into the courtroom, or worse, during the hearing itself. This is simply unacceptable. The court also finds this explanation unpersuasive in light of the fact that this court previously ordered Mr. Levinson's Office, including Mr. Mondejar, who was employed by the firm at that time, to take bankruptcy-related CLE courses, *see supra* note 3.

11

order shortening time on a motion identical to one the court had previously denied on regular time without citing to legal authority that supported the filing. If he or she didn't know of any such authority, that attorney would have conducted legal research. If, after having done so, he or she remained without an argument that the filing was supported by existing law, the reasonably competent attorney would have, at a minimum, offered an analysis that a proposed modification or extension of existing law supported the filing.

The reasonably competent attorney would not have simply changed the date on a previously denied motion and re-submitted it to the court without more than a belief that somehow the very circumstances that were insufficient to justify the relief requested in the first motion were somehow, in the second motion, sufficient to justify an order shortening time. Nor would the reasonably competent attorney have advocated on behalf of such a motion without some modicum of knowledge as to its possible legal basis.

Unlike the reasonably competent attorney, Mr. Levinson filed an OST Motion that included a lengthy quotation of Civil Rule 60 and a statement of facts of about 10 lines, but no legal analysis whatsoever. Mr. Levinson did not cite to any legal authority that permitted the filing of a motion for an order shortening time for a motion identical to one the court had already heard, and denied, on regular time. Worse, Mr. Levinson neglected to disclose the court's previous denial altogether. Mr. Levinson simply made a few modifications to the previously denied motion, changing the title, date, and hearing information, and somehow expected that the court would reward his persistence by granting, on shortened time, the relief sought in a motion the court previously heard and denied on regular time.

Mr. Mondejar's conduct in this matter fares no better. It is also a violation of Rule 9011 when an attorney improperly "later advocat[es]" a

12

pleading that is frivolous. Again, the reasonably competent attorney standard applies, and Mr. Mondejar's conduct fails to satisfy this standard. Completely unprepared, and without any coherent response to the court's Order to Show Cause, Mr. Mondejar showed no familiarity with the matter before the court, much less a command of a possible legal basis authorizing the filing at issue here. He struggled even to learn the nature of the document that gave rise to the hearing, and knew nothing of its contents when he made his appearance. Given that Mr. Mondejar didn't know what his position was in the first place, the court does not see how he could have fulfilled his "duty to conduct a reasonable factual investigation as well as perform adequate legal research that confirms his position [wa]s warranted by existing law (or by a good faith argument for a modification or extension of existing law)." *See In re Blue Pine*, 457 B.R. at 75 (citing *Christian*, 286 F.3d at 1127).

For these reasons, Mr. Levinson violated Rule 9011(b)(2) when he filed the OST Motion and accompanying Levinson Affidavit, and Mr. Mondejar violated Rule 9011(b)(2) when he advocated on behalf of those frivolous papers.[11]

---

[11]These disciplinary proceedings were conducted after dismissal of the debtors' chapter 13 case. After the hearing discussed in the text, Mr. Levinson filed a Chapter 11 voluntary petition on behalf of the Debtors on December 14, 2011, *In re James Spickelmier and Katherin Spickelmier*, Case No. 11-29093, which further convinces the court that the filings at issue here utterly lacked any basis in law, as the filing of a new bankruptcy case instead of the OST Motion would seem to have been a viable option.

In the Debtors' Chapter 11 case, Mr. Levinson failed to appear at the initial status conference hearing and the hearing on the application to employ Mr. Levinson's office under a general retainer. Both hearings were scheduled for February 14, 2012 at 9:00 a.m. The court continued the status conference but denied the application to employ without prejudice. In addition, the court ordered Mr. Levinson's office to disgorge the $3,600 paid by the Debtors as a retainer for legal services related to their Chapter 11 case. From the filings submitted in that case, it appears Mr. Levinson's office received the retainer fee during the pendency of the Debtors' prior Chapter 13 bankruptcy case. *See* Dkt. No. 17, p. 3; *In re James Spickelmier and Katherin Spickelmier*, Case No. 11-29093.

The Debtors have sought and obtained replacement counsel to handle their

13

2. Violations of Rule 9011(b)(3)

The Levinson Affidavit also raises questions under Rule 9011(b)(3). Paragraph (3) of Rule 9011(b) requires that "the allegations and other factual contentions" contained within a filing "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 9011(b)(3). By signing, filing, submitting, or later advocating a motion, an attorney certifies that the motion complies with Paragraph (3) to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ." Rule 9011(b). As it does in the context of Rule 9011(b)(2), the court applies the reasonably competent attorney standard to assess a potential violation of Rule 9011(b)(3). *In re Grantham Bros.*, 922 F.2d at 1441.

Had the reasonably competent attorney submitted an affidavit stating that: "If the hearing is heard in the ordinary course the Debtors will be liable for being garnished, creditors, and risk of foreclosure on property," she would have supported those allegations with some kind of proof. Even if the reasonably competent attorney had discovered, post-filing, that her affidavit and the related motion, as written, lacked evidentiary support, she would have moved to withdraw it; or, if only a portion of the papers lacked evidentiary support, she would have amended them accordingly. If, after all this, the reasonably competent attorney was confronted with an order to show cause that requested specific examples, supported by admissible evidence, of the prejudice referred to the affidavit, she would have, at least, arrived at the hearing prepared to address the court's concerns.

Neither Mr. Levinson's nor Mr. Mondejar's conduct in this matter

---

Chapter 11 case. *See* Dkt. No. 25; *In re James Spickelmier and Katherin Spickelmier*, Case No. 11-29093.

14

complies with what Rule 9011(b)(3) and the reasonably competent attorney standard requires.  Mr. Levinson's Affidavit refers to prejudice.  Yet, even at the show cause hearing, Mr. Mondejar was unable to offer any evidence of the alleged prejudice that existed at the time of the filing of the Levinson Affidavit.[12]  Mr. Mondejar admitted at the show cause hearing that no garnishment actions had been commenced, and he conceded that he could not provide any other proof.  This showing, or non-showing, for lack of a better word, convinces the court that Mr. Levinson signed the Levinson Affidavit without any appropriate evidentiary support.  He apparently believed that he would receive a "pass" for making up events.  He does not.

For these reasons, Mr. Levinson violated Rule 9011(b)(3) when he filed the OST Motion and accompanying affidavit, and Mr. Mondejar violated Rule 9011(b)(3) when he advocated on behalf of those papers.

### III.  DISGORGEMENT OF FEES UNDER SECTION 329

Section 329(b) authorizes the court to "examine the reasonableness of a debtor's attorney fees and, if such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive."  *Hale v. U.S. Trustee*, 509 F.3d 1139, 1147 (9th Cir. 2007) (internal modifications and quotations omitted).  The court's Order to Show Cause also put Mr. Levinson's office on notice of a potential disgorgement under this section.  It stated that one of the sanctions the court could impose was an "order . . . to disgorge fees under the authority of 11 U.S.C. § 329."  (Dkt. No. 71, p. 2).

The reasonable value of services rendered by a debtor's attorney "is a question of fact to be determined by the particular circumstances of each

---

[12]The court places no weight on Mr. Mondejar's representation that a notice of foreclosure was posted on the door of the Debtors' property two weeks before the hearing, which would have been after the September 20, 2011 OST Motion.  An attorney cannot hope that subsequent events will cure a false statement.

15

case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." 3 COLLIER ON BANKRUPTCY ¶ 329.04[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2011) (citing *Hale*, 509 F.3d 1139). *See also Hale v. U.S. Trustee (In re Basham)*, 208 B.R. 926, 933 (B.A.P. 9th Cir. 1997) (affirming bankruptcy court's order to disgorge fees that were unreasonable given the lack of contemporaneous time records and the failure to provide competent and complete representation).

The work counsel performed for the Debtors in this case reflects a lack of competence and diligence that does not deserve to be compensated. Initially, Mr. Levinson's office filed a case for Debtors for which they were not eligible. Their debts clearly exceeded the debt limit for Chapter 13; although the applicable debt limit at the time of filing permitted only $360,475 of unsecured debt, the Debtors' schedules, prepared by Mr. Levinson's office, listed a total of the non-contingent, liquidated unsecured debts of $583,888.[13]

After filing for Debtors a petition for relief under a chapter for which they were not eligible, Mr. Levinson's office negotiated a stipulation for conversion or dismissal with the Chapter 13 Trustee, but failed to comply with it, resulting in the dismissal of the Debtors' case. Counsel then attempted to remedy this failing by moving for reconsideration, but he did not appear at the hearing on the motion. Thereafter, counsel moved for an order shortening time on a motion identical to the one the court previously heard and denied on regular time, without citing to any legal authority that supported the filing. Worse, when the court held the hearing on the Order to Show Cause issued with respect to these filings, counsel failed to provide

---

[13]This consisted of $185,279 of unsecured debts listed in Schedule F, and $398,609 listed in Schedule D as the unsecured portion of secured claims.

16

any support for its actions, despite being warned to come to court prepared to provide such support. Given the poor quality of the services rendered by Mr. Levinson's office in this matter, the court finds that the reasonable value of those services is zero, that is, $0.00. Pursuant to Section 329, which provides the court a separate and independently sufficient basis upon which it can order the disgorgement of fees, the court hereby orders that Mr. Levinson's office disgorge all monies paid by the Debtors in this Chapter 13 case.

## IV. SANCTIONS IMPOSED

Sanctions under Rule 9011 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Rule 9011(c)(2). In this case, extensive sanctions are warranted. Not only are the violations egregious, but this court has long had compliance and competency problems with Mr. Levinson, Mr. Mondejar, and Mr. Levinson's office. *See supra* notes 3 and 11. As a result, significant actions are necessary to both deter future frivolous conduct, and to protect unsuspecting clients of these lawyers.

Accordingly, for the reasons set forth above, the court hereby sanctions Mr. Levinson's office as follows:

(1) Mr. Levinson, Mr. Mondejar, and the law office of Barry Levinson & Associates are hereby publicly reprimanded through this published opinion.[14]

(2) Pursuant to Section 329, Mr. Levinson's office must disgorge all fees paid by the Debtors in this Chapter 13 case to the Debtors' new counsel within 21 days of the date of entry of this opinion.

---

[14]The court will delay publication of this opinion until after the time period for filing a motion under Rule 9023 and for filing an appeal under Rule 8002 has passed. If and when the court publishes this opinion, it will amend this opinion by taking out this note, and by removing the specific docket references used in text.

17

>  Mr. Levinson's office is to file proof of disgorgement, in the form of an affidavit or declaration, with the court within 28 days of the date of entry of this opinion.  A detailed statement of all monies the Debtors paid to Mr. Levinson's office for legal services related to their Chapter 13 case shall accompany the proof of repayment.

(3) With the filing of each new Chapter 11 bankruptcy petition by Mr. Levinson's office for the three years commencing on the date this opinion is entered, the attorney who signs the petition shall simultaneously file proof of compliance, in the form of an affidavit or declaration, with the court's orders requiring completion of CLE courses.  *See supra* note 3.

(4) If, during the three years following the date of this opinion, any litigant or court files any motion or action questioning the propriety or competency of the actions of Mr. Levinson or of Mr. Mondejar (regardless of the firm which employs either), whether such motion or action is commenced under Rule 9011, pursuant to any similar state or federal rule, or pursuant to a court's inherent powers, Mr. Levinson and Mr. Mondejar, as the case may be, shall provide, within 48 hours of service of such a motion or action, a copy of this opinion to court and counsel.

(5) The court will refer this matter to the State Bar of Nevada, so that it may determine whether this case warrants further disciplinary proceedings.

Noncompliance with any of the above may result in the imposition of additional sanctions or a finding of contempt of court.

18

## V. CONCLUSION

Based on the foregoing, the court hereby ORDERS Mr. Levinson's office, Mr. Levinson, and Mr. Mondejar SANCTIONED as set forth above.

This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052, made applicable here by Rule 9014(c).

Copies sent to:

CM/ECF ELECTRONIC NOTICING

BNC MAILING MATRIX

# # #